*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JORDAN KOTICK | : |
| | : Civil Action No.: 18-11916 (FLW) |
| Plaintiff, | : **OPINION** |
| v. | : |
| ATLAS VAN LINES, INC., *et. al.* | : |
| Defendants. | : |

**WOLFSON, United States District Judge**:

This matter comes before the Court on the Motion for summary judgment by Defendants Atlas Van Lines, Inc. ("Atlas") and AMJ Campbell Van Lines ("AMJ") ("cumulatively, Defendants), as to the claims brought by Plaintiff Jordan Kotick ("Plaintiff"). Plaintiff's claims are based, *inter alia*, on the loss or damage that occurred to his grandfather clock, during the transportation of his household goods by Defendants. For the reasons set forth below, Defendants' Motion for summary judgment as to Plaintiff's Carmack Amendment claim is **DENIED**, and the Motion is **GRANTED** as to Plaintiff's breach of contract and New Jersey Consumer Fraud Act ("NJCFA") claims.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are drawn from the parties' Local Rule 56.1 Statements of Material Facts and are undisputed unless otherwise noted. Additional facts will be set forth as required. Atlas operates as "a federally licensed motor carrier of household goods for transport in interstate and international commerce." Defendants' Statement of Undisputed Facts ("Defs.' Statement of

1

Facts"), ¶ 4. AMJ served as a "local agent" for Atlas. *Id*. at ¶ 4. On April 13, 2013, Plaintiff and his wife enlisted Defendants' moving services to transport their household goods from New Jersey to Canada, during which Plaintiff's grandfather clock was damaged. *Id* at ¶ 1; Plaintiff's Statement of Material Facts in Dispute ("Pl.'s Facts"), ¶ 34. On July 5, 2013, Plaintiff "forwarded a correspondence via FedEx" to the President and CEO of AMJ, Bruce Browser, in which he "advis[ed] that his Grandfather Clock was damaged" during the transportation, and "express[ed] his dissatisfaction" with the overall quality of Defendants' moving services. Pl.'s Facts, ¶¶ 34-35. Plaintiff's correspondence did not elicit a response from either defendant. *Id*. at ¶ 35.

The parties' contractual agreement is governed by a "Household Goods Bill of Lading" ("Bill of Lading"). Defs.' Statement of Facts, ¶ 6. Plaintiff's signature appears on the Bill of Lading, and the front page is marked "Page 1 of 2." Declaration of Brenda McCandless (dated August 28, 2018) ("McCandless Dec."), ¶ 3, Ex. A. According to Defendants, "Terms and Conditions" are located on the "reverse side," including Paragraph 6, which provides: "[i]n order to be able to recover any amount from us, you must file a written claim with us for any loss, damage, injury or delay. We must receive your claim at our headquarters within nine months after delivery of your shipment." Defs.' Statement of Facts, ¶ 11. Plaintiff, however, avers that Defendants only "provided him [with] a copy of the front side," which neither contained nor referenced the purported "Terms and Conditions." Declaration of Jordan Kotick (dated December 31, 2018) ("Pl.'s Opp. Declaration"), ¶ 12.

On April 26, 2018,[1] Plaintiff filed the instant Complaint against Defendants in the New Jersey Superior Court, Law Division, Mercer County, asserting various state law claims, including:

---

[1] The Court notes that, although Plaintiff commenced the instant action in New Jersey state court on April 26, 2018, he did not serve the summons and complaint upon Defendants until June 25, 2018.

2

(1) breach of contract; and (2) a violation of the NJCFA. On July 20, 2018, Defendants removed Plaintiff's Complaint on the basis of the Carmack Amendment, which provided this Court with federal question jurisdiction. Now, Defendants move for summary judgment, arguing that Plaintiff's claims are barred, because he did not file an appropriate "claim" with either Atlas or AMJ, as that term is defined in 49 C.F.R. § 1005.2, an implementing regulation of the Carmack Amendment. As an additional ground for summary judgment, Defendants contend that Plaintiff's state law causes of action are subject to Carmack preemption. Plaintiff opposes the motion. On October 8, 2019, the Court held a conference telephone call with the parties, addressing the merits of Defendants' Motion.

## II. DISCUSSION

### A. Standard of Review

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*,

477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. However, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

4

all other facts immaterial." *Id*. at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**B.     Analysis**

   *i.     Carmack Amendment*

As the Supreme Court has long held, actions concerning the "liability of a carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions." [2] *Missouri P. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964). In that connection, the Carmack Amendment to the Interstate Commerce Act creates a private cause of action for shippers against carriers that cause "loss or damage" during the transportation of a shippers' goods. 49 U.S.C. § 14706(d); *S & H Hardware & Supply Co. v. Yellow Transp., Inc.*, 432 F.3d 550, 554 (3d Cir. 2005) ("The Carmack Amendment provides for liability of common carriers for damage to or loss of goods during shipment."). Moreover, in implementing the Carmack Amendment, Congress intended to "create a national scheme of carrier liability for goods damaged or lost during interstate shipment" pursuant to the terms of a valid and enforceable bill of lading. *Usinor Steel Corp. v. Norfolk S. Corp.*, 308 F. Supp. 2d 510, 517 (D.N.J. 2004) (citation omitted); *Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014).

   *ii.     Claims Requirement*

---

[2]     Although Plaintiff alleges a breach of contract violation in Count One of the Complaint, the Court will construe that cause of action as a claim under the Carmack Amendment, as Plaintiff does not, in any way, dispute that the Amendment's provisions are applicable to the transaction in question. *See e.g., Nat'l Union Fire Ins. Co. v. Schneider Nat'l Carriers, Inc.*, No. 15-1401, 2018 U.S. Dist. LEXIS 165628, at *10 (D.N.J. Sept. 25, 2018) (finding that, although the plaintiff's complaint asserted "a claim for breach of contract" against the defendant carrier, the plaintiff's claim "actually arises under the Interstate Commerce Act's Carmack Amendment, 49 U.S.C. § 14706.").

5

As a threshold issue, the parties dispute whether the Bill of Lading, which governs the transportation of Plaintiff's household goods, provided sufficient notice of its Terms and Conditions. Defendants contend that Plaintiff signed a two-sided Bill of Lading, on the back of which Terms and Conditions appeared, including the requirement to file a claim as a prerequisite to bring suit. Defs.' Statement of Facts, ¶ 10. Defendants argue that because Plaintiff failed to adhere to the condition precedent, his non-compliance precludes him from litigating the instant action. Defendants' Motion for Summary Judgment ("Defs.' Moving Brief"), at 6-10. In a sworn declaration, however, Plaintiff states that he was "only provided [with] a copy of the front side" of the Bill of Lading. Pl.'s Opp. Declaration, ¶ 12. Thus, having never received notice, Plaintiff maintains that Defendants cannot seek to dismiss this action, on the basis of his failure to adhere to the Terms and Conditions. I find that a genuine dispute of material fact precludes summary judgment on this issue.

The Court first addresses whether the Terms and Conditions are binding upon Plaintiff. Relevant here, as a prerequisite to bringing suit, § 14706(e)(1) of the Carmack Amendment permits a carrier to require a shipper to file a written "claim," for the purpose of conducting an investigation and "potentially settl[ing] . . . without having to resort to litigation[.]" *S & H Hardware & Supply Co. v. Yellow Transp., Inc.*, No. 02-9055, 2004 U.S. Dist. LEXIS 13158, at *6 (E.D. Pa. July 8, 2004), *aff'm*, 432 F.3d 550 (3d Cir. 2005). More specifically, that provision, in pertinent part, provides:

> A carrier may not provide by rule, contract or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(2). Accordingly, while the Carmack Amendment does not contain an express statute of limitations, it contemplates that a carrier may include a limitations period as a contractual provision in a bill of lading, which serves as a binding agreement between the carrier and shipper.[3] Notwithstanding the authority to impose such a condition, a carrier is barred from requiring a shipper to file a written claim within a period of time that is less than nine months. *Id*. Moreover, a shipper's failure to comply with a "simple" claims requirement has drastic consequences, as non-compliance "can preclude consideration of the merits of [an] underlying claim." *S & H Hardware & Supply Co.*, 432 F.3d at 551. Within this Circuit, "[t]he filing of a written claim within the prescribed period is a strict condition precedent to the filing of a lawsuit." *Id*. at 554 n.1 (quotations omitted).

Here, "[i]n determining the rights and obligations of the parties, the Court looks to the shipping agreement contained within the bill of lading." *Usinor Steel Corp*., 308 F. Supp. 2d at 518. In that regard, although Defendants rely upon Plaintiff's alleged failure to adhere to the Terms

---

[3] According to Defendants, the "law presumes" that Plaintiff "knew" or "should have known" about the nine-month claims requirement, regardless of whether it was included in the Bill of Lading. Defendants' Reply Brief, at 6. However, without addressing the accuracy of Defendants' contentions in this regard, the Court cannot make the legal inference that Plaintiff was aware of the requirement to file a claim on the basis of the Carmack Amendment's plain language. Indeed, the Carmack Amendment does not set forth a mandatory period within which to file a claim, but instead, that statute allows the carrier, if it so chooses, to include a specific limitations period as a provision in a contractual agreement with a shipper. *See, e.g.*, *State Farm Fire & Casualty Co. v. United Van Lines, Inc.*, 825 F. Supp. 896, 901 (N.D. Ca. 1993) ("[T]he Carmack Amendment does not itself establish a nine-month period for filing."); *Norpin Mfg. Co. v. CTS Con-Way Transp. Servs.*, 68 F. Supp. 2d 19, 23 (D. Mass. 1999) ("[T]he [Carmack Amendment] makes clear that nine months is a minimum and not necessarily a required time frame."); *Nematollahi v. Starving Students, Inc.*, No. 01-4310, 2002 U.S. Dist. LEXIS 16681, at *13 (N.D. Ill. Sept. 5, 2002) ("The Carmack Amendment thus contemplates that limitation periods are terms to be bargained over between shipper and carrier . . . ."); *Bay Mach. Servs. v. Codan Forsikring A/S*, Nos. 08-0368, 09-0246, 2011 U.S. Dist. LEXIS 158420, at *37 (E.D. Ark. Feb. 16, 2011) ("§ 1406(e)(1) is not a statute of limitations . . . ."). Thus, to succeed on their argument, Defendants must establish that Plaintiff received a Bill of Lading which provided him with adequate notice of the requirement to file a claim.

and Conditions, a threshold issue exists as to whether Plaintiff was provided with adequate notice of those provisions, including the requirement to file a claim. Defendants contend that the Terms and Conditions were located on the reverse side of the Bill of Lading, but, in the declaration that Plaintiff submits, he denies having received a double-sided contractual agreement. Rather, according to Plaintiff, Defendants provided him with a "copy of the front side" of the Bill of Lading. Pl.'s Opp. Declaration, ¶ 12. In that connection, to the extent that Plaintiff only received a one-sided Bill of Lading which did not contain the Terms and Conditions, his alleged failure to file a claim within a nine-month period would not operate as bar to the instant action. *See, e.g.*, *Norpin Mfg. Co.*, 68 F. Supp. 2d at 23 (holding that the "nine-month limitations period" was inapplicable, because the defendants failed to properly incorporate such a requirement in the bill of lading.). As such, Plaintiff's declaration raises a genuine dispute of material fact, as the parties' conflicting positions precludes the Court from finding that the Bill of Lading includes the nine-month claims requirement which Defendants seek to enforce. Indeed, a contrary holding would require improper fact-finding, and, thus, Defendants' Motion for summary judgment on this basis is denied.[4]

---

[4] During the Court's telephone conference call with the parties, Defendants stated that the Bill of Lading, which Plaintiff signed, is not in their possession. However, if the original version of that document is ultimately obtained and includes Terms and Conditions on the reverse side, I note that Plaintiff's claims would be barred on the basis of his failure to file a claim. A claim, as defined under 49 C.F.R. § 1005.2(b), must (1) contain facts sufficient to identify the damaged or lost shipment; (2) assert liability for alleged loss, damage, injury, or delay; and (3) demand payment of a specified or determinable amount of money. 49 C.F.R. § 1005.2(b). Here, although Plaintiff points to a correspondence from July 5, 2013, identifying a "grandfather clock" that was damaged during shipment, his letter cannot constitute a proper claim, as it does not assert liability. To the contrary, in his letter, Plaintiff admits that he has "no issues" with the alleged damage to his clock, since "it is to be expected that often things will break despite people's best efforts." Pl.'s Opp. Declaration, ¶ 5, Ex. P-1. Moreover, Plaintiff's correspondence neither sets forth a specific sum of money owed, nor does it, at a minimum, provide a means by which to calculate damages. At most, Plaintiff's correspondence expresses his dissatisfaction with Defendants' services, and, therefore, it cannot constitute a properly filed claim.

Nonetheless, the Court notes that Plaintiff's Carmack Amendment claim may still be time-barred under "analogous state statutes of limitations," as he seeks to recover $1,525.00 for the alleged damage which occurred to his grandfather clock, more than five years after his goods were delivered. *KingVision Pay-Per-View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 220 (3d Cir. 2004) (instructing that, "when a federal statute fails to provide a statute of limitations, a court should look to analogous state statutes."); *see, e.g.*, *Bay Mach. Servs.*, 2011 U.S. Dist. LEXIS 158420, at *37 ("In the absence of a valid contractual provision limiting the time for the shipper to file suit against a carrier, federal courts will borrow the forum state's most analogous statute of limitations laws to apply to Carmack Amendment claims."); *M.I.S. Eng'g v. U.S. Express Enters.*, 438 F. Supp. 2d 1056, 1061 (D. Neb. 2006) ("[L]ocal statutes of limitations apply to Carmack Amendment claims when there is no valid contractual provision limiting the time to file suit."). However, because the parties have not addressed this specific issue, the Court will not render a finding within this context. If appropriate, Defendants may move for dismissal on statute of limitations grounds.

      *iii.    Preemption*

Defendants, in addition, argue that Plaintiff's NJCFA claim fails, because the Carmack Amendment provides the sole remedy within the context of interstate shipping.[5] Defs.' Moving Brief, at 11-16. However, Plaintiff contends that he has asserted an independent basis for relief under state law, that is unrelated to the "loss or damage" to his grandfather clock, Plaintiff's Opposition Brief, at 6, such as the "timeliness of packing and loading," and the failure to provide

---

[5]     Although Plaintiff alleges an additional common law claim for breach of contract against Defendants, as stated *supra*, the Court has construed Plaintiff's cause of action as arising under the Carmack Amendment. *See, e.g., Nat'l Union Fire Ins. Co.,* 2018 U.S. Dist. LEXIS 165628, at *10.

9

"packing services," for which he paid. Pl.'s Opp. Declaration, ¶¶ 8, 10. Plaintiff's position lacks merit.

"At common law, a ground carrier's liability for goods damaged in transit varied from jurisdiction to jurisdiction but was virtually unlimited." *Certain Underwriters*, 762 F.3d at 335 (internal quotation marks omitted) (citing *Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 182 (3d Cir. 2006)). This uncertainty prompted the enactment of the Carmack Amendment to the Interstate Commerce Act, which established "a nationally uniform policy governing interstate carriers' liability for property loss." *Id.*; *Penske Logistics, Inc. v. KLLM, Inc.*, 285 F. Supp. 2d 468, 472 (D.N.J. 2003). Addressing "[a]lmost every detail" of interstate carrier liability, the Carmack Amendment leaves no room to question Congress's intent to "supersede all state regulation with reference to" the subject. *Certain Underwriters*, 762 F.3d at 335 (internal quotation marks omitted) (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)). The extent of the Carmack Amendment's preemptive reach is underscored by the Supreme Court, which, for one hundred years, "has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping." *Id.*

"The Court of Appeals have also unanimously held that the Carmack Amendment preempts all state or common law remedies available to a shipper against a carrier for loss or damage" arising from the shipment of goods. *Id.* at 336 (internal citation and quotation marks omitted). Citing to the Supreme Court's decision in *Ga., Fla. & Ala. Ry. v. Blish Milling Co.,* the Third Circuit, and federal courts within this district, in particular, have described the "Amendment's preemptive force as exceedingly broad—broad enough to embrace all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." *Id.* (internal quotation marks omitted); *see also Mecca & Sons Trucking Corp. v. White Arrow, LLC*, 763 Fed. Appx. 222, 227 (3d Cir.

2019); *Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 407-08 (3d Cir. 2008); *see also Raineri v. North American Van Lines, Inc.*, 906 F. Supp. 2d 334, 340 (D.N.J. 2012); *Aspen Am. Ins. Co. v. Total Quality Logistics, LLC*, No. 17-5281, 2019 U.S. Dist. LEXIS 45800, at *7 n.4 (D.N.J. Mar. 20, 2019); *Brudnak v. A.A. Moving & Storage, Inc.*, No. 14-6964, 2015 U.S. Dist. LEXIS 36359, at *7-8 (D.N.J. Mar. 24, 2015); *La. Transp. v. Cowan Sys., LLC*, No. 11-3435, 2012 U.S. Dist. LEXIS 66294, at *9 (D.N.J. May 10, 2012).

Accordingly, the Amendment's preemptive reach has been applied to a wide range of state and common law claims that arise from a carrier's failure to meet its obligations under a contractual agreement with a shipper. *See e.g., Certain Underwriters*, 762 F.3d at 335 (holding that claims for "breach of contract, negligence, [and] conversion" are preempted by the Carmack Amendment); *Usinor Steel Corp.* 308 F. Supp. 2d at 518 (finding that the Carmack Amendment preempts "claims for breach of contract, negligence, breach of bailment and conversion"); *Raineri*, 906 F. Supp. 2d at 340 (holding that the Amendment preempts state law claims that relate to the "formal claims process"); *La. Transp.*, 2012 U.S. Dist. LEXIS 66294, at *6 (ruling that "book account claim[s]," and claims for breach of contract, breach of promise, quantum meruit, and "fraud and estoppel" are preempted by the Amendment); *Krauss v. IRIS USA, Inc.*, No. 17-778, 2017 U.S. Dist. LEXIS 193008, at *13 (E.D. Pa., Nov. 22, 2017) (finding that the Amendment preempts "negligence, breach of contract, and state consumer protection" claims). In fact, with the exception of a limited "peripheral set" of claims, which are not alleged here,[6] "the Carmack Amendment preempts state

---

[6] Courts have identified a non-exhaustive set of independent claims that may coexist with a Carmack Amendment cause of action, including incidental costs for attorney's fees agreed upon by contract, and, in some instances, claims for the intentional infliction of emotional distress and outrage, provided such claims are grounded upon conduct that is truly independent from the delivery, loss, or damage to transported goods. *See Certain Underwriters*, 762 F.3d at 336 n.4; *Mallory v. Allied Van Lines, Inc.*, No. 02-7800, 2003 U.S. Dist. LEXIS 19652, at *8 (E.D. Pa. Oct. 20, 2003) (citations omitted).

law under almost all circumstances." *Certain Underwriters*, 762 F.3d at 336 n.4; *Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 345 (D.N.J. 2001).

Here, Plaintiff asserts an NJCFA claim, on the basis of having incurred $567.82 in "additional charges for special packing" that "did not exist" or that Defendants failed to provide, despite their assurances. Complaint, ¶ 23; Pl.'s Opp. Declaration, ¶ 10. In his declaration, Plaintiff also explains that Defendants commenced their transportation services on June 22, 2013, one day after the "promised" date, without bringing "the appropriate amount of workers" to pack his household goods and "load the trucks," as the entire loading process lasted "late into the evening." *Id.*

Plaintiff's NJCFA claim falls squarely within the Amendment's broad preemptive reach. Of significance here, federal courts throughout the country have consistently held that the Carmack Amendment preempts consumer protection and deceptive practice claims that arise under state or common law. *See, e.g., Gordon v. United Van Lines*, 130 F.3d 282, 290 (7th Cir. 1997); *Rehm v. Balt. Storage Co.*, 300 F. Supp. 2d 408, 414 (W.D. Va. 2004); *Richter v. North Am. Van Lines, Inc.*, 110 F. Supp. 2d 406, 412 (D. Md. 2000); *Schultz v. Auld*, 848 F. Supp. 1497, 1503 (D. Idaho 1993); *Pickett v. Graebel Kan. City Movers, Inc.*, No. 17-2021, 2017 U.S. Dist. LEXIS 79885, at *7 (D. Kan. May 24, 2017); *Racing Head Serv., LLC v. Mallory Alexander Int'l Logistics*, No. 09-2604, 2012 U.S. Dist. LEXIS 6713, at *67 (W.D. Tenn. 2012); *Neely v. Mayflower Transit, LLC*, No. 02-9347, 2003 U.S. Dist. LEXIS 25682, at *10 (N.D. Ill. July 31, 2003); *Faust v. Clark & Reid Co.*, No. 94-4580, 1994 U.S. Dist. LEXIS 16743, at *3 (E.D. Pa. 1994).

New Jersey courts have also ruled that the Carmack Amendment preempts state law consumer protection claims. In fact, district courts within this circuit are in uniform agreement; the Carmack Amendment's preemptive scope broadly encompasses claims under the NJCFA, even

in situations where a shipper incurs an "additional amount" for a particular service that the carrier did not provide. *See. e.g., Berryman v. Wheaton Van Lines, Inc.*, No. 06-5679, 2007 U.S. Dist. LEXIS 32218, at *7 (D.N.J. May 2, 2007) (holding that the Carmack Amendment preempted the shipper's NJCFA claim which arose when the carrier did not adhere to a protection plan for her transported goods, for which she paid a premium); *Brudnak*, 2015 U.S. Dist. LEXIS 36359, at *7-8 (finding that the shipper's NJCFA claim did not "involve harm independent of the [its] contractual relationship with" the carrier); *La. Transp.*, 2012 U.S. Dist. LEXIS 66294, at *13-14 (ruling that the "plaintiff's consumer fraud claim . . . should be considered under the Carmack Amendment"); *Orlick v*, 144 F. Supp. 2d at 345 (finding that the Amendment preempts "claims of fraud as to the bill of lading," including NJCFA claims).

Notwithstanding the Amendment's vast preemptive reach, Plaintiff argues that he has raised an independent NJCFA claim, because the failure to provide "special packaging" and to commence the loading process on time relates to the "contract itself," as opposed to the loss or damage to his grandfather clock. Plaintiff's Opposition Brief, at 6. Plaintiff's contentions, however, are in direct conflict with the Amendment's preemptive scope, which is broad enough to include "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." *Certain Underwriters*, 762 F.3d at 335 (internal quotation marks omitted). In that connection, Plaintiff does not dispute that the specific packaging requirements and the date on which to commence the transportation services pertain to Defendants' contractual obligations under the shipping agreement for transporting goods. Thus, their alleged breaches cannot constitute a separate and distinct harm which falls outside of the Carmack Amendment. As such, Plaintiff's NJCFA claim is preempted. *Raineri*, 906 F. Supp. 2d at 340 n.7 (finding that the carrier's "failure to discharge duties concerning packaging and loading [the shipper's] belongings

into a trailer, fall squarely within the scope of the Carmack Amendment."); *Richter*, 110 F. Supp. 2d at 417 (holding that allegations relating to "representations allegedly made by the carrier's agents as to how the goods were to be packed, [and] when the goods would arrive" are preempted by the Carmack Amendment).

Nonetheless, to the extent that federal preemption is inapplicable, Plaintiff has failed to allege that Defendants violated the NJCFA.[7] It is axiomatic that a mere breach of contract cannot, alone, support a cause of action under that statute. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994); *Barry v. New Jersey State Highway Authority*, 245 N.J. Super. 302, 308-09 (Ch. Div. 1990) (explaining that, with nothing more, "every breach of a contract" could constitute an NJCFA claim, because "all contracts include a promise of performance, either express or implied."); *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997) (finding that a breach of a contract, in of itself, is not a *per se* unconscionable business practice and may not, alone, violate the NJCFA). Instead, an NJCFA claim that is based on a breach of contract theory requires "substantial aggravating circumstances," including "bad faith or lack of fair dealing, sufficient to constitute an unconscionable business practice." *Petri Paint Co. v. Omg Ams., Inc.*, 595 F. Supp. 2d 416, 421 (D.N.J. 2008) (citing *Cox*, 138 N.J. 2 at 462). Here, however, Plaintiff merely premises his NJCFA claim on Defendants' alleged violations of its contractual obligations under the agreement, relating to packing and loading, without additional allegations to support the fact that Defendants' conduct rises to the level of "an unconscionable business practice." Therefore, Plaintiff's NJCFA claim also fails on the merits.

---

[7] To succeed under the NJCFA, a plaintiff must provide factual evidence in support of the following elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge*, 197 N.J. 543, 557 (2009).

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for summary judgment as to Plaintiff's claim under the Carmack Amendment is **DENIED**, and the Motion is **GRANTED** as to Plaintiff's breach of contract and NJCFA claims.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge
